UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

DEC 1 4 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RUTHIE M. GOODMAN ,  )
  )
Plaintiff,  )
  )
v.  )  Civil Action No. 03-2558 (RJL)
  )
JOHN E. POTTER,  )
  )
Defendant.  )

MEMORANDUM OPINION
(December _14_ , 2005)

This employment discrimination case is before the Court on Defendant's Motion for

Summary Judgment on the remaining claim brought under the Rehabilitation Act of 1973, 29

U.S.C. § 701 *et seq*. *See* Memorandum Opinion ("Mem. Op.") and Order of February 14, 2005

(dismissing all other claims). Plaintiff Ruthie M. Goodman has opposed the motion and cross

moved for summary judgment. Upon consideration of the parties' submissions and the entire

record, the Court will grant defendant's motion and dismiss the case.

I. BACKGROUND

Ms. Goodman is a former mail carrier who suffered a dog bite while delivering mail in

June 1987. She was diagnosed with nerve damage, required surgery, and finally diagnosed as

"having sustained a permanent impairment." Complaint at 4. During her tenure with the Postal

Service after the injury, Ms. Goodman was assigned to light or limited duty at its Ward Place

Station, where she worked the day shift from December 1989 until May 1994. In May 1994, Ms.

Goodman was assigned to a night shift at defendant's Cleveland Park Station. She "refused the

detailed assignment offer" because "the night shift did not meet the requirements of her physical

limitations and violated the U.S. Postal Service Collective Bargaining Agreement of her working out of schedule." *Id.*

In July 1994, Ms. Goodman filed an equal employment opportunity ("EEO") charge "for reasonable accommodation to remain in a day shift position." *Id* at 5. After a hearing (and apparent decision) in 1998, Ms. Goodman eventually received a notice of removal dated June 21, 1999. The notice cited her for "failure to be regular in attendance and [] failure to follow official instruction." *Id* at 6. Ms. Goodman filed an EEO charge for wrongful termination in June 1999 "based on her left leg disability [and] other U.S. Postal Service violations. . . ." *Id* at 7. The agency issued its final decision on September 30, 2003. *Id* at 8.

Ms. Goodman's Rehabilitation Act claim is based on defendant's alleged failure to accommodate her disability by assigning her to a day shift. Defendant moves for summary judgment on the bases that Ms. Goodman is not a qualified individual as defined by the Act and that she failed to provide timely notification of her need for accommodation and to provide medical documentation to substantiate that need.

## II.  DISCUSSION

Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When evaluating a summary judgment motion, the Court must view the evidence in favor of the nonmoving party and believe and give benefit of all reasonable inferences drawn from the nonmoving party's evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As a general rule, "[i]n deciding whether there is a genuine issue of fact before it, the

court must assume the truth of all statements proffered by the party opposing summary judgment." *Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) (citing *Alyeska Pipeline Serv. Co. v. United States Envtl. Protection Agency*, 856 F.2d 309, 314 (D.C. Cir. 1988)). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

Summary judgment is appropriate in an employment discrimination case "where either the evidence is insufficient to establish a prima facie case, . . . or, assuming a prima facie case, there is no genuine issue of material fact that the defendant's articulated nondiscriminatory reasons for the challenged decision is pretextual." *Paul v. Federal Nat'l Mortgage Ass'n*, 697 F. Supp. 547, 553 (D.D.C. 1988) (citations omitted); *see Phillips v. Holladay Property Services, Inc.*, 937 F. Supp. 32, 34 (D.D.C. 1996), *aff'd* No. 96-7202, 1997 WL 411695 (D.C. Cir. Jun 19, 1997). It is often difficult for a plaintiff to offer direct proof of an employer's discrimination. For that reason, summary disposition of such cases is not favored and the court "must be extra-careful to view all the evidence in the light most favorable" to the plaintiff. *Ross v. Runyon*, 859 F. Supp. 15, 21-22 (D.D.C. 1994), *aff'd per curiam*, No. 95-5080, 1995 WL 791567 (D.C. Cir. Dec. 7, 1995). Nonetheless, summary judgment is appropriate if a plaintiff relies on "[e]vidence of discrimination that is 'merely colorable,' or 'not significantly probative.'" *Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 15 (D.D.C. 1993) (citation omitted).

3

The Rehabilitation Act of 1973 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination . . . by any Executive Agency." *See* 29 U.S.C. § 794(a). The language "solely by reason of" requires plaintiff to establish a "causal link . . . [that] the employer . . . acted with an awareness of the disability itself." *Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 897 (D.C. Cir. 1998). To survive defendant's summary judgment motion, Ms. Goodman must proffer sufficient evidence establishing that (1) she is disabled within the meaning of 29 C.F.R. § 1614.203(a), (b); (2) her employer was aware of her disability; (3) with reasonable accommodation she could perform the essential functions of the position; and (4) she was denied a reasonable accommodation. *Scarborough v. Natsios*, 190 F. Supp. 2d 5, 19 (D.D.C. 2002) (citations omitted). For the following reasons, she has not done so.

*1. Plaintiff's Alleged Disability*

The Rehabilitation Act defines a disability as a "physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B). "Major life activities" are defined by regulation as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The Act's terms are "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota Motor Manufacturing Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002).[1] In analyzing the issue, the Court must "ask whether [plaintiff's]

---

[1]   Although the *Toyota* case involved claims brought under the Americans With Disabilities Act ("ADA"), the Supreme Court looked to the regulations interpreting the Rehabilitation Act as one of "two potential sources of guidance . . . ." *Toyota*, 534 U.S. at 193.

impairments prevented or restricted her from performing tasks that are of central importance

to most people's daily lives." *Id.* at 187. A determination of disability is analyzed on a case-

by-case basis of how the impairment affects the life of the individual. *Id.* at 198; *Sutton v.*

*United Air Lines*, 527 U.S. 471, 483 (1999) ("whether a person has a disability under the

ADA is an individualized inquiry."). Ms. Goodman therefore must proffer "'evidence that the

extent of the limitation [caused by (her) impairment] in terms of [her] own experience . . . is

substantial.'" *Toyota*, 534 U.S. at 198 (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S.

555, 567 (1999)) (brackets in original).

    Ms. Goodman asserts that since the injury, she "suffers pain, swelling and spasms each

day of her life."[2]  Plaintiff's Answer to Defendant's Motion for Summary Judgment ("Pl.'s

Opp.") at 8.  She claims that her left foot "is moderately swollen each day[,] some days are

better than others.  The pain is more extensive during weather changes, late evening hours,

walking, standing and sitting." *Id.*  To relieve the pain and swelling, plaintiff states that she

must wear shoes one size larger than her normal size.  She cannot walk, stand, or sit for any

prolonged period of time without pain or spasms and therefore claims that she cannot "work

any sedentary jobs such as cashiers or any job that has to do with prolong walking, standing

and sitting without pain." *Id.*  Ms. Goodman claims that she is substantially limited in

performing manual tasks, doing housework, lifting, and "playing with her grandchild or

---

    [2]  Ms. Goodman also claims to "now suffer[]" from high blood pressure and
posttraumatic stress disorder. *Id.*  Any claim based on ailments subsequent to those forming
the basis of the complaint are not redressable here because liability attaches under the
Rehabilitation Act when it is shown that the employer acted with "an awareness of the
disability . . ." *Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 897 (D.C. Cir.
1998).

children."[3]  *Id.* at 9.  She shops with the use of a cane or by leaning on the shopping cart,

rides public transportation, albeit in discomfort, and drives.  *Id.* at 8-9.  To avoid pain and

spasms while driving, Ms. Goodman "must keep her left leg constantly moving and or

extended outward."  *Id.* at 9.  Ms. Goodman states that she can no longer enjoy "leisure life

as she once had, such as play tennis, dancing, bike ride, run, and walk because of the pain and

swelling in her left foot and leg."  *Id.*

　　"[T]o be substantially limited in performing manual tasks, an individual must have a

[permanent or long-term] impairment that prevents or severely restricts the individual from

doing activities that are of central importance to most people's daily lives."  *Toyota*, 534 U.S.

at 198.  This includes such activities as performing "household chores, bathing, and brushing

one's teeth."  *Id.* at 202.  Such lifestyle changes as avoiding sweeping, quitting dancing,

"occasionally" seeking help dressing, and reducing "how often [one] plays with her children,

gardens, and drives long distances . . . [do] not amount to such severe restrictions in the

activities that are of central importance to most people's daily lives that they establish a

manual task disability as a matter of law."  *Id.*  By her own admission, Ms. Goodman worked

through her pain in order to "to stay gainfully employed with the Defendants."  Pl.'s Opp. at 9.

Although most of her alleged restrictions are the type of "lifestyle changes" the Supreme

Court has implicitly rejected as supporting a disability, defendant has failed to support its

---

　　　[3]  Contrary to defendant's suggestion, *see* Memorandum of Points and Authorities in
Support of Defendant's Motion for Summary Judgment at 8, Ms. Goodman has not advanced a
claim that she is substantially limited in the life activity of working.  Whether Ms. Goodman's
impairment prevents her from working in a broad class of jobs therefore is irrelevant.  *See*
*Toyota*, 534 U.S. at 199- 201 (limiting "class-based" and job-specific tasks analyses to claims
based on the activity of working).

motion on this element of the *prima facie* case with any contradicting evidence. At the least, Ms. Goodman has created a genuine issue of material fact on whether she is disabled under the Act. Her claim nonetheless fails on the remaining elements.

### 2. Defendant's Awareness of the Disability and Accommodation Need

Defendant asserts that Ms. Goodman failed to provide timely notice of her need to work the day shift and failed to report to work after the reassignment in May 1994. Ms. Goodman disputes both facts, albeit confusingly. In her opposition, Ms. Goodman counters that she "did in fact reported [sic] to the Cleveland Park Station, and gave notice to acting supervisor about her inability to work the night shift. The supervisor was given a detailed medical report of the Plaintiff['s] medical condition and restrictions." Pl.'s Opp. at 4. In her complaint, Ms. Goodman alleges that "she was issued a detail assignment order by acting supervisor, Steve Jones," on June 23, 1994, and "in the same day" spoke with her immediate supervisor, Verly Burton, about the reassignment. Complaint at 4. Defendant agrees that Ms. Goodman provided medical documentation of her condition on June 23, 1994, Def't Fact ¶ 11, but asserts that it occurred nearly one month after the effective date of the reassignment (May 28, 1994). Ms. Goodman does not dispute defendant's evidence establishing that she was to report to the Cleveland Park site on May 28, 1994 at 10:30 p.m, *see* Def't's Exh. 4 ("Assignment Order), nor has she claimed that she did not receive timely notice of the reassignment.[4]

Defendant may be liable under the Act only for adverse decisions taken with knowledge of the disability. "Reports about which the defendant employer had absolutely no knowledge

---

[4]  Ms. Goodman's answers to interrogatories propounded during the administrative proceeding establishes the crucial date as "May 24, 1994." Def't's Exh. 6.

nor access prior to [acting] cannot serve as the sole evidentiary basis of establishing an element of a prima facie case of disability discrimination." *Weigert v. Georgetown University*, 120 F. Supp.2d 1, 8 (D.D.C. 2000). "An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard University*, 198 F.3d 857, 861 (D.C. Cir. 1999). No reasonable juror could find from this record that at the time of its reassignment decision, defendant was aware of Ms. Goodman's need to work the day shift and nevertheless denied her request.

### 3. Defendant's Reasonable Accommodation

A qualified individual with a disability is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Sutton v. United Air Lines*, 527 U.S. 471, 478 (1999) (internal citation and quotation marks omitted). Ms. Goodman asserts that despite her impairments, she continued to work during the day shift. Although defendant disputes Ms. Goodman's claim of being disabled, it has not claimed that Ms. Goodman was unable to perform the essential functions of her job with reasonable accommodation. To the contrary, it is undisputed that in response to the dog bite injury, defendant assigned Ms. Goodman to a limited duty, sedentary position beginning in 1989. Def.'s Exh. 13, Declaration of Rodney Payne ("Payne Decl.) ¶¶ 5-6. She remained on a day shift until 1994, when the agency decided to centralize operations "to enable[] the Agency to better monitor that the employees were not working outside of their restrictions." Payne Decl. ¶ 8. Effective May 28, 1994, Ms. Goodman was reassigned to perform the same work at a different location and

between the hours of 10:30 p.m. and 7 a.m. She "refused the detailed assignment offer" because, *inter alia*, "the night shift did not meet the requirements of her physical limitations." Complaint at 4.

In light of defendant's undisputed evidence that it did provide a reasonable accommodation, Ms. Goodman "has the burden of going forward with the evidence concerning possible [additional] accommodations to rebut the employer's evidence." *Carter v. Bennett*, 651 F. Supp. 1299, 1301 (D.D.C. 1987), *aff'd.*840 F.2d 63 (D.C. Cir. 1988). Her sole support is a letter dated June 23, 1994, to the workers' compensation office in which her doctor diagnosed her as having permanent partial disability and restricted her from "prolonged sitting, standing, climbing stairs and lifting or carrying over 20 pounds." Def't's Exh. 5. He also "recommended" that "Ms. Goodman continue her physical therapy on Saturdays and Sundays and work the hours of 6 am to 3:30 pm to avoid the climate of evenings which causes her extensive pain and swelling." *Id*. The letter contains no medical documentation that reasonably explains why the evening climate (no matter the season) exacerbates Ms. Goodman's condition. A reasonable deduction therefore is that it was based solely on Ms. Goodman's prompting. In any event, the recommendation is not significantly probative of the question of whether Ms. Goodman could perform the essential functions of her job, which presumably were confined indoors. It is undisputed that the initial accommodation involved reassignment to a "position [that] was sedentary and involved working with mail that was 'undeliverable as addressed' and 'return to sender.'" Def't's Facts ¶ 5. The job functions did not change when Ms. Goodman was reassigned to the night shift. *Id*. ¶ 9; Def't's Exh. 3. Ms. Goodman's admission that she worked the day shift despite her impairments, Pl.'s Opp. at 9, belies a claim that limiting her hours to the

day shift was "necessary for adequate performance of [her] job," *Carter v. Bennett*, 651 F. Supp.
at 1301, where there was no change in her job functions. "The government is not obligated under
the statute to provide plaintiff with every [requested] accommodation, but only with reasonable
accommodation as is necessary to enable [her] to perform [her] essential functions." *Id.* Ms.
Goodman has not proffered any evidence from which a reasonable juror could find that the shift
from day to night adversely affected her ability to perform the essential functions of her job.
Defendant's motion for summary judgment will be granted on the failure to accommodate claim.

### 4. *Wrongful Termination*

Ms. Goodman also claims that she was wrongfully terminated in June 1999 because of
her disability. To prevail on this claim, Ms. Goodman must show in addition to her disability
that she was otherwise qualified to perform the essential functions of her job and that her
employer was aware of her disability, but either refused to accommodate her or terminated her
because of the disability. *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994); *Chinchillo v. Powell*,
236 F. Supp.2d 18, 21 (D.D.C. 2003) (citing cases).

Ms. Goodman admits that she "refused" the reassignment because it did not meet the
requirements of her physical limitations and allegedly violated the U.S. Postal Service Collective
Bargaining Agreement. Complaint at 4. She also admits that shortly after the reassignment, she
became ill and remained at home on bed rest. Ms. Goodman "maintained communication by
telephone and letters with her supervisor, manager and postmaster to stay gainfully employed at
Ward Place Station or any station in a daytime position [but] her calls were never returned and
she never received a response to her letters to this date." *Id.* at 5. Apparently, rather than
reporting for duty at the Cleveland Park Station, Ms. Goodman sat at home awaiting "a

10

reassignment order letter or telephone call returning her back to work at Ward Place Station . . . "[5] Pl.'s Opp. at 6; Def't's Exh. 6. Five years later, she was terminated for "failure to be regular in attendance and failure to follow official instructions." Def't's Facts ¶ 13 (citing Complaint). Defendant has not argued that it terminated Ms. Goodman for legitimate non-discriminatory reasons. As a matter of law, however, no reasonable juror could find from this record that Ms. Goodman was terminated "solely by reason of . . . her disability." 29 U.S.C. § 794(a). [6]

For the preceding reasons, defendant's motion for summary judgment is granted. A separate Order accompanies this Memorandum Opinion.

Richard J. Leon
United States District Judge

Date: 12/14/05

---

[5] Although Ms. Goodman claims that she appeared at the Cleveland Park Station on June 23, 1994, she has not disputed with any competent evidence defendant's claim that she never "report[ed] to work at the Cleveland Park Station at any time since May 28, 1994." Def't's Fact ¶ 10. Moreover, her admissions tend to contradict a claim that she formally reported for duty.

[6] In an Orthopaedic Consultation Report dated May 30, 1997, Ms. Goodman was diagnosed as "not fit for any employment. She cannot stand or walk enough for any gainful employment." Pl.'s Exh. 1 at 8. Arguably by the date of termination, Ms. Goodman was no longer qualified to perform the essential functions of her job and therefore could not state a claim under the Rehabilitation Act based on the termination.

11